## CRUMLISH v. MUTUAL LIFE INS. CO. OF NEW YORK.

## SAME v. METROPOLITAN LIFE INS. CO.

### Nos. 5187, 5188.

Circuit Court of Appeals, Third Circuit.

Feb. 27, 1934.

Harry Donnelly, Joseph C. Ryszeleski, and Edward J. Darreff, all of Philadelphia, Pa., for appellant.

Arthur G. Dickson, of Philadelphia, Pa. (Frederick L. Allen and Leroy A. Lincoln, both of New York City, of counsel), for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

Each of the defendant companies issued a policy of insurance to Emil Schurgot promising, in substantially the same words, payment of double indemnity upon proof that the death of the insured "resulted directly from bodily injury * * * independently and exclusively of all other causes, and that such bodily injury was effected solely through external, violent and accidental means * * *

provided, however, that this double indemnity shall not be payable \* \* \* if such death result \* \* \* directly or indirectly from (or, as in the other policy, "be contributed to by") bodily or mental infirmity or disease of any sort."

Schurgot died under questionable circumstances. In these suits on the two policies his executor sought to recover double indemnity on the ground of accidental death. The companies answered that the death of the insured was not accidental but resulted from his voluntary act, contributed to by disease of the heart and kidneys. The cases were tried together. The defendants had verdicts, and from the judgments that followed the plaintiff appealed.

At the trial the plaintiff, in proof of his claim that death "resulted directly from bodily injury \* \* \* independently and exclusively of all other causes," produced evidence that the insured was found lying face downward on the floor of the kitchen of his apartment, dead. The room was filled with gas which was pouring from an unlighted burner of the gas stove, a coffee pot resting upon it had boiled over, and the gas jet, if it had been lighted, could have been extinguished by the coffee. The theory of the plaintiff was that the insured had lighted the burner, placed the coffee pot over it and sat down at the table to read the paper while the coffee was making, that the coffee boiled over and put out the gas flame, and that the insured was overcome by gas before he noticed the odor.

It was, of course, incumbent upon the plaintiff to establish the cause of death of the insured; and that it was accidental. He called a physician who had examined the body immediately after it was discovered and who testified unqualifiedly that in his opinion the cause of death was gas poisoning. On this the plaintiff rested.

As no autopsy had been made, the defendants produced no witness who had direct knowledge of any facts relating to the cause of death. Their sole defense was a direct and vigorous attack upon the credibility of the plaintiff's doctor, the only witness as to the cause of death. This attack was based on two grounds: One, that the doctor, who testified to accidental death, had before certified to the coroner in Philadelphia "the cause of death was illuminating gas poison, contributory acute myocarditis and acute Bright's disease"; the other, testimony by experts that the facts on which the plaintiff's doctor based his testimony were insufficient to form a definite opinion as to what the cause of

death was and that any opinion so formed was pure conjecture. On this issue of credibility, sharply raised and properly submitted, the jury evidently did not believe the plaintiff's physician who alone had given testimony of accidental death of the insured. Accordingly, there being no other evidence on the subject, they rendered verdicts for the defendants.

But there was more in the case than this.

█ █ It happened that at the trial the defendants submitted and the court charged a point that the burden is upon the plaintiff to prove death of the insured within the terms of the quoted provisions of the policies. As these provisions distinctly contain two parts, one, in the affirmative, that payment of double indemnity shall be made upon proof that death "resulted directly from bodily injury \* \* \* independently and exclusively of all other causes," in respect to which, confessedly, the burden of proof rested upon the plaintiff; the other, in the negative, "that double indemnity shall not be payable \* \* \* if such death result \* \* \* directly or indirectly from (or was contributed to by) bodily or mental infirmity or disease," the burden of proving which was clearly not upon the plaintiff but, being an exception to the main covenant, was upon the defendants which had asserted it as a defense. The inclusion of the latter paragraph in his charge with an illustration of its operation was, as the learned trial judge admitted in his opinion sur motion for new trial, error. Had the case stopped there and been submitted to the jury on the defendants' point imposing this double burden of proof on the plaintiff, resulting in verdicts for the defendants, the error certainly would have been prejudicial and the judgments would be reversed. But before the conclusion of the trial the plaintiff's doctor said something and before the conclusion of the charge the learned trial judge did something which raise the question on this appeal, whether the affirmance and charge of the defendants' point, technically error, was prejudicial error. Judicial Code, § 269 (28 US CA § 391).

In regard to the certificate which he gave the coroner in Philadelphia, indicating heart trouble and kidney trouble as causes contributing to the death of the insured, the plaintiff's doctor later testified that the insured had a slight heart weakness and an indication of kidney trouble two weeks or more before he died, coupled with his positive statement that those conditions had cleared up and were cured. As the defendants introduced no

312

evidence on the subject, this left the testimony, as the judge explained to the jury, without proof by either party of the presence of disease before death and left the case where it originally stood on the testimony of the doctor in respect to accidental death of the healthy man by asphyxiation.

The plaintiff's contention that the jury were bound to accept his testimony on the matter of accidental death because not directly contradicted by opposing testimony is not sound. The doctor's testimony was impeached and, as it turned out, successfully impeached. The case then was without his testimony of death by accident and therefore without any testimony on that essential ingredient of the causes of action.

Notwithstanding he had charged the defendants' point as to the plaintiff's burden of proof on both paragraphs of the provisions of the policies, the learned trial judge realized and charged the jury that the only question for them to consider and decide on the evidence as it had developed was whether the death of the insured was accidental and that they should decide that question according as they accepted or did not accept the testimony of the plaintiff's physician. Thus his credibility became the central issue in the case. In substance, the judge charged the jury, if they should believe the physician, then there was testimony that death was accidental and the plaintiff should recover; if they should not believe him, there was no testimony that death was accidental and their verdicts should be for the defendants. That instruction, with the explanation that had gone before, in a very practical sense withdrew from the jury any consideration on the point inadvertently charged that there was a burden on the plaintiff to prove the negative fact that death did not result directly or indirectly from bodily or mental infirmity or disease. As the plaintiff's doctor denied that it did so result, and as the defendants said nothing to contradict him, that matter, manifestly, was out of the case and the charge on the point as to the burden of proving it fell out of the case also.

It appears from a careful reading of the charge on the testimony that the learned trial judge submitted the case on the true issue. He tripped for a moment and then trod a straight course which the jury could not fail to see and follow. We are firmly of opinion that the error complained of, though technical, was in no sense prejudicial.

The judgments are affirmed.